## 75620. SPARKS v. THE STATE.
(363 SE2d 631)

DEEN, Presiding Judge.

This case concerns the armed robbery of a neighborhood "beer
store." The sole clerk on duty was stocking the shelves when he was
surprised by a man who pointed a pistol at him and ordered him to
give him the contents of the cash drawer. During the transaction the
clerk fell to the floor, striking his head on a sharp corner and sus-
taining an injury. The robber escaped with $302 in cash. A young man
sitting in a car parked nearby saw the robber emerge from the store
and subsequently made positive identification of appellant as the per-
petrator.

Only a few minutes after the incident was reported, police picked
up a person in the neighborhood, one Stewart, who in a general way
fit the description the clerk/victim had given of his assailant. The vic-
tim, still somewhat dizzy from the blow to his head, tentatively iden-
tified the captive as the robber. Some half-hour later, one of the in-
vestigating officers, who had had his memory jogged by the victim's
description of the assailant's "bumpy" cheeks, returned to the store
carrying a photograph of appellant and those of four other persons of
generally similar appearance. The officer took appellant's photograph
from his pocket and laid it on the counter and was in the process of
removing the other four from his pocket when the victim positively
identified the photograph of appellant as his assailant. The next day
the victim picked appellant's photograph from a folder containing
pictures of five different males of generally similar appearance and
again made a positive identification, emphasizing the distinctiveness
of the "bumpy" cheeks.

After trial and conviction on counts of aggravated assault, posses-
sion of a firearm by a felon, and armed robbery, the case was ap-
pealed to this court in 1986, appellant enumerating as error the denial
of his motion to suppress the pretrial identification of his photograph;
the imposition of separate sentences for armed robbery and the alleg-
edly lesser included offense of aggravated assault; and the denial of
his motion for mistrial based on the prosecutor's use of peremptory

challenges for the alleged purpose of excluding blacks from the jury, in violation of *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986). The record showed that the trial court had overruled defense counsel's objections to the exclusion of blacks without first requiring the prosecuting attorney to give an explanation for his exercise of peremptory challenges. This court therefore remanded the case for proceedings consistent with the mandate of *Batson* and did not address the remaining enumerations of error.

On remand the prosecutor stated specific "racially neutral" reasons (in each instance, that the prospective juror was somehow related to the defendant or was in some way involved with the criminal justice system) for having rejected each of the black persons eliminated by peremptory challenge, and the trial court held that there had been no violation of appellant's constitutionally guaranteed rights to due process, equal protection, and trial by an impartial jury. Sparks then appealed to this court for review of the remaining enumerations of error. *Held*:

1. The State concedes that, in the fact situation of the instant case, appellant is correct in contending that aggravated assault (here, assault with a deadly weapon) was a lesser offense included in armed robbery; that the aggravated assault charge therefore merged with that of armed robbery; and that the trial court erred in imposing separate, consecutive sentences for each offense. We agree that, under OCGA § 16-1-7, this was error and that the case must once again be remanded, so that the conviction and sentence on the aggravated assault charge may be vacated. See OCGA § 16-1-6 (1); *Hambrick v. State*, 256 Ga. 148, 150 (344 SE2d 639) (1986); *Young v. State*, 177 Ga. App. 756 (341 SE2d 286) (1986).

2. Appellant contends that the victim's pretrial identification of his photograph violated the protections mandated in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), and related cases. In *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968), the Supreme Court held, at 384, that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Thus there is "a two-step inquiry": (1) whether there was an impermissibly suggestive photographic identification procedure, and (2) if so, whether this resulted in a substantial likelihood of irreparable misidentification. *Clark v. State*, 149 Ga. App. 641, 643 (255 SE2d 110) (1979). "It is the likelihood of misidentification which violates a defendant's right to due process . . ." *Neil v. Biggers*, supra at 198. "The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less

reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process." Id. at 199. "Each case must be considered on its own facts, and the due process test looks to the totality of the surrounding circumstances. [Cits.]" *Gravitt v. State*, 239 Ga. 709, 710 (239 SE2d 149) (1977).

In the instant case we are troubled by the fact, albeit perhaps fortuitous, that the first photograph which the officer removed from his pocket was that of the appellant. It may well have been the officer's intention, as he testified, to show all five of the photographs, and to show them in random order; but the fact that the first — and, as it turned out, the *only* — photograph actually shown was that of the appellant does at least arguably render the circumstances of the showing so suggestive as to cast doubt upon the reliability of the identification. Without corroboration, such evidence would be of at least dubious admissibility.

In the case at bar, however, there were other circumstances present which would effectively counteract any impermissible suggestiveness that might have been created. The first fact tending to negate the possibly deleterious effect of the photographic identification procedure is that the victim's initial identification of Stewart, the person arrested in the vicinity only minutes after the robbery, was only tentative and, as brought out at trial, was made when the victim was still groggy from his head injury. ("It dizzed [sic] me," the victim/clerk testified.) Second, prior to being confronted by Stewart, the clerk had given investigating officers a rather detailed description of the assailant's facial features, with especial reference to the prominent "bumps" on his cheeks; Stewart had no such "bumps," whereas appellant decidedly did. Third, when the clerk initially saw the photograph, and again when he saw the full folder of five photographs, he was positive and unwavering in his identification of appellant as the robber. Fourth, there was the uncontested testimony of the other eyewitness, the person sitting in the parked car, which positively identified appellant, thereby corroborating the victim's identification. Fifth, the alibi evidence presented by the defendant, consisting solely of his own testimony and that of his family and "girl friends," was unconvincing, was unsupported by any objective evidence, and was contradicted at a number of points by the testimony of others, including some of his "friends." His alibi defense in no wise met the statutory criterion of "exclud[ing] the possibility of [defendant's] presence" at the scene of the crime. OCGA § 16-3-40. Moreover, the record indicates that the "factors to be considered in evaluating the likelihood of misidentification," *Neil v. Biggers*, supra at 199, which applied to the facts of the instant case, tend to support the identification made by the victim and to militate against "the likelihood of misidentification

which violates a defendant's right to due process." Id. at 198.

In "the totality of the circumstances," then, the likelihood that admission of the arguably tainted evidence would produce an "irreparable" misidentification such as would lead to conviction of the wrong person seems to us to be, at best, minimal rather than "substantial." *Clark v. State*, supra at 143. The trial court did not err in denying appellant's motion to suppress.

*Judgment affirmed in part and reversed in part; case remanded with direction. Birdsong, C. J., and Pope, J., concur.*

DECIDED DECEMBER 4, 1987.

*Bentley C. Adams III*, for appellant.
*Johnnie L. Caldwell, Jr., District Attorney*, for appellee.