A12A0259. THOMPSON v. THE STATE.
(724 SE2d 475)

ELLINGTON, Chief Judge.
A Gwinnett County jury found Everet Thompson guilty of kidnapping with bodily injury, OCGA § 16-5-40 (a), (d) (4); armed robbery, OCGA § 16-8-41 (a); and three counts of aggravated assault, OCGA § 16-5-21 (a) (2). Thompson appeals from the denial of his motion for new trial, contending that the evidence of asportation was insufficient to support his kidnapping conviction and that the trial court erred in failing to merge his armed robbery conviction with one of the aggravated assault convictions. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following relevant facts. Around 11:00 p.m. on May 3, 2008, as Clifton White and his wife and two children arrived at their Gwinnett County home after an evening out, Thompson and an accomplice entered White's garage behind White's car. The men

---

[12] See *Badger v. State*, 310 Ga. App. 157, 160 (712 SE2d 582) (2011).
[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

flanked the car, pointed their guns at White and his family, and demanded that they get out of the car. One of the men shouted: "This is a robbery!" Thompson demanded that White take him inside the house, and yelled at him to open the door. As White struggled to locate his house keys, Thompson struck him in the head with his handgun. As Thompson forced White into the house at gunpoint, his armed accomplice remained near the garage with White's wife, son, and daughter. White testified that both men wore gloves and held handguns.

Once inside the house, Thompson forced White to walk through the house and upstairs to the master bedroom, where White had a safe. As White was being taken upstairs, Thompson struck him on the head with his handgun a second time. By the time White reached the bedroom, he was bleeding so profusely that he could not see to open the safe. When White became very agitated and asked about his family's whereabouts and welfare, Thompson pushed him into a closet and called his accomplice on a cell phone. White heard Thompson say: "Dog, where are you?" As Thompson tried to locate his accomplice, he told White: "Shut up before I shoot you and kill you." Thompson struck White again and ordered him to open the safe, but White could not see. As White tried to wipe the blood from his face, Thompson opened the bedroom window and shouted outside, trying to find his accomplice. Thompson then marched White to the bathroom and made him wash the blood off of his face. Although White was eventually able to open the safe, Thompson took nothing from it. Panicked, he forced White back downstairs and outside to regroup with his accomplice and White's family, who were nowhere to be seen. Thompson took White back to the garage and threatened him again at gunpoint, so White gave Thompson the $1,500 in cash that he had in his pocket. At that point, White heard a car speeding down the street, and Thompson fled toward the car.

During the time that White was being forced through his house, White's wife and son managed to wrestle Thompson's accomplice to the ground. They knocked his handgun away long enough for the wife and daughter to run across the street to a neighbor's house and for the son to escape. During his struggle with the accomplice, the son noticed that the man was wearing a vest. White's wife called 911, and the police quickly responded. From across the street, the wife could see into her bedroom window and she witnessed Thompson moving her husband around. The wife saw the robbers flee from her home in a Nissan.

The police were able to block the exit to White's subdivision before the robbers could escape. The driver of the Nissan, in an attempt to avoid the roadblock, backed the car over a brick mailbox, and got stuck on top of it. When the police pulled Thompson from the

passenger side of the car, they noticed that he had a roll of duct tape around his arm. He also had a large amount of cash in his pocket. The driver was wearing a bulletproof vest and had a mask wedged inside his shoe. The police found two handguns and gloves in the car.

1. Thompson contends the trial court should have merged his conviction on Count 3 of the indictment (the aggravated assault of White by pointing a handgun at him) with Count 2 of the indictment (the armed robbery of White). We disagree.

The offenses of aggravated assault and armed robbery may merge as a matter of fact,[2] depending on the evidence adduced at trial. "For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Citation and punctuation omitted.) *Johnson v. State*, 279 Ga. App. 182, 184 (2) (b) (630 SE2d 778) (2006). See also *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009). In this case, as in both *Johnson* and *Henderson*, the crimes were proved by different facts. Thompson committed the aggravated assault against White as alleged in Count 3 when he first confronted him in the garage with his family and pointed a handgun at him. He committed the armed robbery later, after he had forced White through his house and then back outside to the garage. Once there, he committed the armed robbery as alleged in Count 2 by pointing a handgun at White, demanding his money, and taking the cash White had in his pocket. Because the aggravated assault was complete prior to the armed robbery, the trial court did not err by entering separate convictions and sentences on these two counts. See *Henderson v. State*, 285 Ga. at 244 (4).

2. Thompson argues that his kidnapping with bodily injury conviction should be reversed because the evidence supporting the element of asportation, moving White into and through the residence, was merely incidental to the offense of armed robbery and thus insufficient under *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[3] We disagree.

To determine the sufficiency of evidence of asportation, this

---

[2] "Aggravated assault is not a lesser included offense of armed robbery as a matter of law, and the two offenses rarely merge as a matter of fact." (Citation and punctuation omitted.) *Silvers v. State*, 278 Ga. 45, 48 (4) (597 SE2d 373) (2004). See also *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006) (adopting "required evidence" test for determining when offenses merge).

[3] The *Garza* case law concerning asportation was superseded by statute for offenses occurring after July 1, 2009. See OCGA § 16-5-40. *Thomas v. State*, 289 Ga. 877, 879 (2) (717 SE2d 187) (2011). Because this offense occurred prior to the statute's effective date, *Garza* applies. *Hammond v. State*, 289 Ga. 142, 144, n. 3 (710 SE2d 124) (2011).

Court assesses the evidence according to these four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Citations and footnote omitted.) *Garza v. State*, 284 Ga. at 702 (1). Here, the movement of the victim through the house was protracted, involved several beatings, and involved shoving the victim into a closet while Thompson tried to locate his accomplice. These movements through the house were not an inherent part of the armed robbery, which occurred later, outside and next to White's garage. Further, Thompson's acts of moving White through the house created an additional danger to White by enhancing his control over him and isolating him from protection or rescue. Accordingly, the element of asportation was established, and the evidence was sufficient to support Thompson's conviction for kidnapping with bodily injury. See *Henderson v. State*, 285 Ga. at 244-245 (5). Therefore, we find no error.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 29, 2012.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.